IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

LAWRENCE REDMAN,                    )
                                    )
              Plaintiff             )    1:24-CV-00310-RAL
                                    )
    vs.                             )    RICHARD A. LANZILLO
                                    )    Chief United States Magistrate Judge
                                    )
RANDY IRWIN, et al.,                )
                                    )    MEMORANDUM OPINION ON
              Defendants            )    DEFENDANTS' PENDING MOTIONS
                                    )
                                    )
                                    )    IN RE:
                                    )
                                    )    ECF NO. 54
                                    )    ECF NO. 56
                                    )    ECF NO. 63
                                    )    ECF NO. 65
                                    )    ECF NO. 67
                                    )    ECF NO. 69
                                    )    ECF NO. 71
                                    )    ECF NO. 78
                                    )

**MEMORANDUM OPINION**

## I.    Background and Relevant Procedural History

Plaintiff Lawrence Redman is an inmate in the custody of the Pennsylvania

Department of Corrections ("DOC"). At all times relevant to this action, he was

housed at the DOC's State Correctional Institution at Forest ("SCI-Forest"). He

commenced this action against SCI-Forest Superintendent Randy Irwin, two

physicians associated with Wellpath, LLC ("Wellpath")[1]—Dr. Mary Howick and Dr. Rhoederick Manhattan[2], and Dr. David Smith, Jr. and his employer, Clarion Hospital. Redman claims that the Defendants acted with deliberate indifference to his ruptured right Achilles tendon injury and related medical needs in violation of his Eighth Amendment rights. He seeks redress of this violation under 42 U.S.C. §1983. He also asserts medical malpractice claims under Pennsylvania state law against Drs. Howick, Manhattan, and Smith. Redman's Amended Complaint (ECF No. 62) is the operative pleading before the Court.

Eight related motions are pending before the Court: Defendant Clarion Hospital's Motion to Strike Plaintiff's Certificate of Merit (ECF No. 54) and Motion to Dismiss the Amended Complaint under Rule 12(b)(6) (ECF No 63), Defendant Smith's Motion to Dismiss Plaintiff's Certificate of Merit (ECF No. 56) and Motion to Dismiss under Rule 12(b)(6) (ECF No. 71), Defendants Manhattan and Howick's Motion to Dismiss under Rule 12(b)(6) (ECF No. 65)[3], Motion to Strike Plaintiff's Certificate of Merit (ECF No. 67), and Motion to Dismiss based on discharge or

---

[1] At all times relevant to this action, the DOC had a contract with Wellpath to provide medical services at its state correctional institutions. *See* ECF No. 62, ¶11. Wellpath is not a party to this action although the Amended Complaint includes numerous allegations regarding Wellpath and its policies. *See id.*, ¶¶ 14-29.

[2] Redman alleges that Defendant Manhattan is a physician while Manhattan's filings identify him as a physician's assistant. For purposes of the pending motions, the Court will refer to him as "Dr. Manhattan," consistent with Redman's Amended Complaint.

[3] This motion was incorrectly docketed as a Motion to Dismiss for Lack of Jurisdiction.

release in bankruptcy (ECF No. 78), and Defendant Irwin's Motion to Dismiss under Rule 12(b)(6) (ECF No. 69).

For the reasons explained below, the motions to dismiss the Amended Complaint will be granted in part and denied in part, and the motions to strike or dismiss Redman's certificate of merit will be denied as moot.[4]

## II. Material Facts Alleged in the Amended Complaint

In 2021, Redman sustained a ruptured right Achilles tendon. ECF No. 62, ¶46. He reported the injury to prison nursing staff who misdiagnosed the condition as a high ankle sprain and provided him with an ankle sleeve and an order for ibuprofen and aspirin. *Id.*, ¶¶47-48. Over the next few months, Redman repeatedly reported to the "nursing staff" that something was wrong with his Achilles tendon. *Id.*, ¶49. At one point, Nurse Rankin asked Redman why he was still limping, and he responded, "my Achilles tendon is not going to heal itself." *Id.*

On September 1, 2022, Redman filled out a sick call slip and handed it to Jamie Fardasco, a medical department supervisor. *Id.*, ¶50. A radiologist at SCI-Forest later performed an x-ray of Redman's ankle, but he advised Redman that the x-ray would not show a torn Achilles tendon. It did, however, show a right heel bone spur. *Id.*, ¶51. The radiologist advised Redman that an MRI would be necessary to reveal an Achilles tendon injury. *Id.* Redman was later seen by Nurse Practitioner Darian who tried multiple times to get him on the list for an MRI at an outside hospital, "but

---

[4] All parties have consulted to the jurisdiction of a United States Magistrate Judge in this action.

the DOC kept denying those requests." *Id.*, ¶52. The DOC ultimately approved Redman for an MRI, but only after Nurse Practitioner Darian entered his injury in the computer as a shoulder injury. *Id.*, ¶53. While Redman was at Clarion Hospital for the shoulder MRI, he had the opportunity to consult with Dr. Smith and show him his Achilles tendon tear. *Id.*, ¶54. Dr. Smith put Redman's "shoulder surgery on hold" and ordered an MRI of his Achilles tendon. *Id.*, ¶55. Redman was later returned to Clarion Hospital for the MRI. Thereafter, he was informed that "his Achilles tendon in his right leg was ruptured and was hanging on by a thread, the rest of the tendon was rolled up the leg to the calf because of the long delay in bring[ing] [him] to the hospital, which at that time was a full year before [his] injury got addressed." *Id.*, ¶56. Dr. Smith advised Redman that he should have been seen within 24 to 72 hours of his injury. *Id.*, ¶¶56-57.

Redman underwent surgery at Clarion Hospital to repair his ruptured Achilles tendon on November 28, 2022.[5] *Id.*, ¶58. In or around late February 2023, Redman's surgical incision started producing heavy drainage. He showed his surgical incision to "Nurse Kate," who immediately called for approval to send him to Clarion Hospital. *Id.*, ¶59. Redman was seen by Dr. Smith who ordered an MRI and IV treatments. *Id.*, ¶60. One of Dr. Smith's colleagues visited Redman's hospital room and told him that the surgery to his Achilles tendon had failed and had become infected, that he was not the surgeon who performed the surgery, and that Dr. Smith would be in to

---

[5] The Amended Complaint does not specifically allege who performed Redman's initial tendon repair surgery but based on his other submissions and those of the Defendants, it appears Dr. Smith performed the surgery.

4

explain the plan of action. *Id.*, ¶61. Dr. Smith later visited Redman and told him that the surgery did not fail and that his colleague did not know what he was talking about. *Id.*, ¶62. Dr. Smith ordered the continuation of IV antibiotics every six hours and then released Redman to return to SCI-Forest. *Id.*, ¶63. Redman believes Dr. Smith "misdiagnosed the failed Achilles tendon surgery because later at the prison the Achilles tendon repair started to deteriorate. *Id.*, ¶64.

On February 21, 2024, around a year after Redman last saw Dr. Smith, Redman's sutures started pushing out though his skin "with plastic screws that fell out into Nurse Detter's hands during a bandage change." *Id.*, ¶65. Three days later, on February 24, plastic anchors started pushing their way out through open wounds and heavy drainage. *Id.*, ¶66. Redman suffered with swelling and pain before he received corrective surgery by a different surgeon at Grove City Hospital on April 15, 2024. *Id.*, ¶67. This corrective surgery revealed that Redman's Achilles tendon "was left shredded and there was softening of the heel bone." *Id.*, ¶68. Redman alleges that these conditions show that Dr. Smith's "choice to not perform surgery was deliberately indifferent to [his] serious medical needs ... by not performing surgery immediately upon diagnosis of infection and the MRI results." *Id.*, ¶69. Even after the corrective surgery on April 15, 2024, "doctors at SCI Forest" allowed "sutures just hanging" out of Redman's leg for months. *Id.*, ¶71. Redman was placed in the restricted housing unit ("RHU") where his infection worsened because he was housed next to a mentally ill inmate who threw fecal matter outside his cell. *Id.*, ¶73. Redman submitted sick call slips requesting removal of his sutures, but Dr.

Manhattan ignored them for months. *Id.*, ¶74. After Redman filed a grievance, Dr. Manhattan came to the RHU, trimmed back the sutures, and instructed a nurse to inject him with Rocephin,[6] which caused his "incision to blow wide open." *Id.*, ¶75. Redman has continued to suffer open wounds, swelling, drainage, and pain during the two years since his surgery on November 28, 2022. *Id.*, ¶76. Redman continued to be housed in the RHU despite recommendations by Dr. Stein that he be housed in the infirmary where he could receive appropriate wound care with proper equipment. *Id.*, ¶77. On November 8, 2024, Dr. Manhattan had to stop using the "wound vac" to treat Redman because it was not being maintained properly and was causing excess moisture and tissue breakdown. *Id.*, ¶78. On November 10, 2024, another suture popped out of Redman's skin, and he was sent out to Dr. Stein's office to have it removed. *Id.*, ¶79. During Redman's consultation with Dr. Stein on November 19, 2024, he again recommended that Redman be transferred from the RHU to the infirmary, but that recommendation was denied by "the administration and Brad Aveneli." *Id.*, ¶80. On January 6, 2025, Redman was sent to a hospital in Philadelphia where he underwent a series of surgeries to irrigate and debride Redman's leg, scrape infection off the bone, and repair a hole in his bone from screws that have broken off. *Id.*, ¶83.

Redman claims broadly that all Defendants acted with deliberate indifference to his serious medical conditions and needs and that their actions and omissions were

---

[6] According to the Mayo Clinic, Rocephin belongs to the class of medicines known as cephalosporin antibiotics used to treat bacterial infections in many parts of the body. It works by killing bacteria or preventing their growth. *See* https://www.mayoclinic.org/drugs-supplements/ceftriaxone-injection-route/description/drg-20073123/last visited on March 9, 2026.

pursuant to policies and customs of the DOC, Defendant Irwin, and Wellpath, including policies that caused delays and deficiencies in his medical care for nonmedical reasons. He also claims that the care and treatment provided by each medical provider Defendant fell below the standard of care and constituted medical malpractice. *Id.*, ¶¶84-92.

## III. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations of the complaint and view them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). The court is not opining on whether the plaintiff is likely to prevail on the merits; the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-36 (3d ed. 2004)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint should only be dismissed under Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

While a complaint does not need detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions. *See id.*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Attain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not

accept inferences drawn by a plaintiff if they are unsupported by the facts as explained in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. See *Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Finally, because Redman is proceeding pro se, his complaint will be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read his pro se pleading to state a claim upon which relief can be granted, it will do so despite his failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969).

## IV. Discussion and Analysis

### A. All motions to dismiss Redman's state law medical malpractice claims against Dr. Smith, Clarion Hospital, Dr. Manhattan, and Dr. Howick will be denied to the extent they are based on Redman's failure to comply with Pennsylvania Rule of Civil Procedure 1043.3.

Dr. Smith, Clarion Hospital, Dr. Manhattan, and Dr. Howick all argue that Redman's medical malpractice claims against them must be dismissed because he has failed to comply with the "certificate of merit" requirement of 231 Pa. Code Rule

8

1042.3.[7]  *See* ECF Nos. 64, p. 7; 67, p. 14; 72, p. 8.  When Defendants filed their motions, their position was supported by controlling precedent from the United States Court of Appeals for the Third Circuit holding that Rule 1042.3 is a substantive rule of law that federal courts must apply when presented with a professional negligence claim under Pennsylvania law. *See Schmigel v. Uchal*, 800 F.3d 113, 118 (3d Cir. 2015); *Liggon-Redding v. Est. of Sugarman*, 659 F.3d 258, 264-65 (3d Cir. 2011).  But the continued validity of this precedent became suspect when the Supreme Court issued its decision in *Berk v. Choy*, No. 24-440, ___ U.S. ___, 146 S. Ct. 546 (Jan. 20, 2026).  In *Berk*, the plaintiff sued a hospital and physician for medical malpractice under Delaware law in federal court based on diversity of citizenship jurisdiction. The district court dismissed the plaintiff's medical malpractice claim because he failed to comply with a provision of Delaware law that prohibited a plaintiff from suing for "medical malpractice unless an affidavit of merit 'accompanie[s]' the complaint." *Id.*, 146 S. Ct. at 551 (quoting Del. Code, Tit. 18, § 6853(a)(1) (2025)).  The Delaware statute specifies that the affidavit must be signed by a medical professional and state that there are "reasonable grounds to believe that there has been health-care medical negligence committed by each defendant." *Id.* (quoting Del. Code, Tit. 18, § 6853(a)(1)).  The Third Circuit affirmed, holding that the Delaware law was substantive and that federal courts were therefore required to apply it to malpractice

---

[7] These Defendants have also moved to strike or dismiss Redman's certificate of merit (ECF No. 53) on the grounds that it does not comply with Rule 1042.3.  *See* ECF Nos. 54, 56, 57.

claims under Delaware law. *Id.* (citing *Berk v. Choy*, 2024 WL 3534482, at *4 (3d Cir. July 25, 2024)).

The Supreme Court reversed. The Court first noted that when a provision of the Federal Rules of Civil Procedure governs a particular procedural question, any contrary state rules of procedure are displaced and may not be enforced in federal court. *Id.* at 552-53 (citing *Hanna v. Plumer*, 380 U.S. 460, 469-74 (1965); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)). The Court then held that the Delaware law conflicted with Federal Rule of Civil Procedure 8(a)(2), which "requires only a short and plain statement of the claim" for a complaint to state a claim upon which relief may be granted. *Id.* (internal quotation marks omitted) (quoting *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993)). As the Court explained, Rule 8 "sets a ceiling on the information that plaintiffs can be required to provide about the merits of their claims" at the pleading stage. *Id.* The filing of an affidavit of merit as a condition to bringing a medical malpractice claim exceeded the requirements of Rule 8 and therefore did not apply in federal court. *Id.*

Rule 1042.3 is similar in application to the Delaware law at issue in *Berk*. It requires a plaintiff pursuing a malpractice or professional negligence claim under Pennsylvania law to file a certificate of merit as a condition to proceeding with the claim. *See* Pa. R. Civ. P. 1042.3(a). The certificate of merit must state that "an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in

the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm" or that "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim." *Id.* at (a)(1)-(3). The plaintiff must file a certificate of merit for each professional defendant named in the action. *Id.* at (b)(1). Every district court to address the issue since the Supreme Court decided *Berk* has held that *Berk* abrogated *Schmigel*, 800 F.3d at 118 and *Liggon-Redding*, 659 F.3d at 264-65, and that the certificate-of-merit requirement of Rule 1042.3 no longer applies in professional negligence and malpractice actions in federal court. *See Allen v. Voorstad*, 2026 WL 184276, at *3 (M.D. Pa. Jan. 23, 2026); *Aycock v. Malhi*, 2026 WL 312724, at *6 (M.D. Pa. Feb. 5, 2026); *Ruzbacki v. Newhaven Ct. at Clearview*, 2026 WL 380968, at *5 (W.D. Pa. Feb. 11, 2026) (Stickman, J.).

Defendants urge this Court to reach a different result, arguing that Rule 1042.3 is distinguishable from the Delaware law because the latter requires the affidavit of merit to be filed with the complaint, while Rule 1042.3(a) requires the certificate of merit to be filed "with the complaint or *within sixty days after the filing of the complaint.*" *See e.g.*, ECF No. 108, pp. 4-5. This sixty-day window for compliance, however, still maintains the certificate-of-merit requirement as a threshold pleading obligation beyond the "short and plain statement" required by Rule 8(a). This is evident from each medical professional Defendant's assertion that Redman's failure to comply with Rule 1042.3 means that his Amended Complaint fails to state a claim for medical malpractice and is subject to dismissal under Rule

12(b)(6). Finally, the Court notes that the Delaware "affidavit of merit" law also allows for a "60-day extension for the time of filing the affidavit of merit." Del. Code, Tit. 18, § 6853(a)(2). This 60-day allowance for filing the affidavit of merit did not negate the conflict between the law and Rule 8(a) as determined by the Supreme Court in *Berk*. This Court reaches the same conclusion regarding the 60-day window for filing a certificate of merit under Rule 1042.3(a).

Pennsylvania's requirement of a certificate of merit as a condition to maintaining a professional negligence or malpractice claim does not apply in federal court. The Court will therefore deny Defendants' motions to dismiss Redman's medical malpractice claims to the extend they are based on this requirement and deny as moot Defendants' motions to strike Redman's certificate of merit.

**B. The Amended Complaint fails to state a § 1983 claim against Dr. Smith and Clarion Hospital because it does not allege facts to support that either acted under color of state law.**

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must establish that each defendant, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. *See Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638–39 (3d Cir. 1995) (citation omitted); *see also Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (§ 1983 authorizes a claim for deprivation "of a federal constitutional or statutory right *by a state actor*.") (emphasis added).

Dr. Smith is not an employee of the DOC or otherwise an agent of the Commonwealth of Pennsylvania. Similarly, Clarion Hospital is a private entity. Private entities and individuals can qualify as state actors only in "a few limited circumstances." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019). These circumstances include (i) "when the private entity performs a traditional, exclusive public function, (ii) when the government compels the private entity to take a particular action, or (iii) when the government acts jointly with the private entity." *Id.* (internal citations omitted). Recognizing the narrow circumstances under which a private individual or entity can be considered a state actor, courts have held that "[a] physician at a private hospital is not a 'state actor' for purposes of a section 1983 claim simply because that physician treats incarcerated individuals," *Mobley v. Sahota*, 2014 WL 13133639, at *3 (W.D. Pa. July 16, 2014), and that "[a] private action is not converted into one under color of state law merely by some tenuous connection to state action." *Groman*, 47 F.3d at 638–39. "The issue is not whether the state was involved in some way in the relevant events, but whether the action taken can be fairly attributed to the state itself." *Id.* (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)).

Redman does not allege that Dr. Smith is a government official, or that Clarion Hospital is a Commonwealth agency or other Commonwealth entity; nor does he allege facts to support that such a close nexus exists "between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations

and citations omitted).  The facts alleged in the Amended Complaint support only that Dr. Smith and Clarion Hospital acted as private actors who provided medical services to Redman as they would have provided to any patient.  As such, neither can be liable under § 1983.  *See Kartorie v. Dunham,* 108 Fed. Appx. 694, 699 (3d Cir. 2004) (doctor who performed Accu-Chek test on inmate not a state official because he was under no contract with the state and did not act in a manner chargeable to the state); *Carver v. Plyer*, 115 Fed. Appx. 532, 537 (3d Cir. 2004) ("we hold that St. Luke's is not a state actor for purposes of section 1983 under any of the possible tests used to determine whether one's conduct is attributable to the state."); *Pinnock v. Univ. of Pa. Hosp.*, 2025 WL 2901060, at *3 (E.D. Pa. Oct. 9, 2025) (dismissing claims brought under § 1983 against a hospital and doctors because the plaintiff failed to plead facts to support that they were state actors); *compare West v. Atkins*, 487 U.S. 42 (1988) (defendant found to be state actor when he provided health care to prisoners, in the prison, pursuant to a contract with the facility).  Accordingly, Redman's Eighth Amendment claims against Dr. Smith and Clarion Hospital under § 1983 will be dismissed.

## C. The Amended Complaint fails to state a medical malpractice claim against Dr. Smith or Clarion Hospital.

To support a prima facie case of medical malpractice under Pennsylvania law, the plaintiff must allege facts to support "(1) a duty owed by the physician to the patient, (2) a breach of duty from the physician to the patient, (3) that the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient, and (4) damages suffered by the patient that were a direct

14

result of that harm." *Mitzelfelt v. Kamrin*, 526 Pa. 54, 62, 584 A.2d 888, 891 (1990) (citing *Morena v. South Hills Health System*, 501 Pa. 634, 462 A.2d 680 (1983)); *see also* Prosser, Law of Torts, Section 30 at 143 (4th ed. 1971); *Bishop v. Wexford Health Sources, Inc.*, 2019 WL 6311491, at *5 (W.D. Pa. Nov. 25, 2019)).   The Amended Complaint supports the existence of a physician-patient relationship between Dr. Smith and Redman.   Therefore, under Pennsylvania law, Dr. Smith had a duty to adhere to "generally accepted standards of medical practice" in the care he provided to Redman. *Greene v. United States*, 540 F. Supp. 3d 467, 477 (M.D. Pa. 2021) (citing *Toogood v. Owen J. Rogal*, D.D.S., P.C., 573 Pa. 245, 824 A.2d 1140, 1145 (2003)). The existence of an injury or adverse medical outcome, however, does not alone demonstrate a doctor's breach of this duty. *Mitchell v. Shikora*, 653 Pa. 103, 209 A.3d 307, 315 (2019) (citations omitted).

Redman's allegations against Dr. Smith relate to multiple aspects of his medical care, beginning with his initial surgery to repair his ruptured Achilles tendon.  He alleges that the surgery was unsuccessful but, this allegation, standing alone, is insufficient to support an inference that Dr. Smith was negligent. *Id.* Redman further claims that he was later returned to Clarion Hospital with signs of a post-operative infection and that another doctor told him that the Achilles tendon repair surgery had failed.  Dr. Smith later told Redman that he disagreed with his colleague's conclusion and ordered the continuation of IV antibiotics every six hours for Redman's infection.  Redman believes Dr. Smith "misdiagnosed the failed Achilles tendon surgery because later at the prison the Achilles tendon repair started to

15

deteriorate." *Id.*, ¶64. About a year after the repair surgery, Redman experienced severe complications, including hardware protruding from or around the incision site. Finally, Redman alleges that he had a further surgery performed by another doctor on April 15, 2024, and that this surgery revealed his Achilles tendon to be in a "shredded" condition.

Redman does not allege that Dr. Smith improperly performed the initial repair of his Achilles tendon, only that Redman began to experience complications after the surgery. The alleged comment by Dr. Smith's colleague indicates that Dr. Smith may have received some indication that the surgery was unsuccessful, but this allegation is too vague and isolated to support a plausible inference that Dr. Smith was negligent, even when considered with complications that followed the surgery. An inference that Redman's complications were due to negligence by Dr. Smith would require pure speculation. The Amended Complaint simply does not allege any failure by Dr. Smith to perform a necessary or prudent diagnostic test or procedure or any deviation from generally accepted medical practice in his performance of Redman's initial surgery or his post-operative care. Absent such allegations, the Amended Complaint fails to state a medical malpractice claim against Dr. Smith.

The Amended Complaint also fails to state a medical malpractice claim against Clarion Hospital. Redman alleges that Clarion Hospital directly employed Dr. Smith. While somewhat conclusory, the allegation is sufficient at this stage of the case to support Clarion Hospital's vicarious liability for any negligence of Dr. Smith. *See McLaughlin v. Nahata*, 298 A.3d 384, 412 (Pa. 2023) (hospital may be held vicariously

liable for negligence of a physician where hospital directly employs physician or independent contractor physician was an ostensible agent of hospital). But, as discussed above, the Amended Complaint falls short of stating a claim against Dr. Smith and, therefore, it also fails to state a vicarious liability claim against Clarion Hospital. In addition, the Amended Complaint also includes no allegations to support an inference that Clarion Hospital was independently negligent in its care of Redman. Accordingly, the medical malpractice claim against Clarion Hospital also will be dismissed.

### D. Drs. Howick and Manhattan's Motion to Dismiss based on Release in Bankruptcy will be denied without prejudice pending Redman's submission of evidence that he opted out of the Third-Party Release in the Wellpath Bankruptcy.

Drs. Howick and Manhattan have filed a separate motion to dismiss all claims against them based on the release of claims included in the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of its Debtor Affiliates to the Plan of Reorganization ("Plan") confirmed by the United States Bankruptcy Court for the Southern District of Texas, Houston, Texas (the "Bankruptcy Court"). *See* ECF No. 78. For the reasons discussed below, the Court will deny this motion without prejudice.

The Court takes judicial notice of the follow facts: On November 11, 2024 (the "Petition Date"), the Debtors, including Wellpath Holdings, Inc. and its affiliated companies, filed petitions in the Bankruptcy Court under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Cases"). The Bankruptcy Cases were jointly administered under case number 24-90533 in the Southern District of Texas.

17

Redman's Amended Complaint alleges that both Dr. Howick and Dr. Manhattan are employed by Wellpath, the company the DOC contracted to provide medical services to inmates at SCI-Forest and other state correctional institution during the relevant time here. *See* ECF No. 62, ¶7. Wellpath is an affiliated Debtor in the Bankruptcy Case.

On May 9, 2025 (the "Effective Date"), the Debtors filed Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) Administrative Claims Bar Date [ECF No. 2680, Case No. 24-90533] giving notice that the Plan was effective. Under the Plan and Confirmation Order, all claims and causes of action (as defined in the Plan) against Wellpath Holdings, Inc. and its affiliated Debtors have been discharged and holders of such claims and causes of action are permanently enjoined from, among other things, commencing or continuing any proceeding of any kind in connection with such claims. *See* 11 U.S.C. § 524 (a) ("A discharge in a case under this title . . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor...."). Because Wellpath is not named as a defendant in Redman's lawsuit, its discharge in bankruptcy is not at issue.

The Plan, however, also includes a Third-Party Release relating to claims against current and former employees of the Debtors, including employees of Wellpath. Article IX of the Plan required plaintiffs such as Redman to "opt out" of the Third-Party Release if they wish to preserve their claims against such employees.

Article IX.F of the Plan provides that holders of claims subject to the Third-Party Release who did not opt out are permanently enjoined from "commencing or continuing any action or proceeding of any kind on account of or in connection with or with respect of" any released claims. The deadline to exercise this opt-out right has long-since passed.

Drs. Howick and Manhattan's motion alleges that Redman did not opt out of the Third-Party Release before the deadline. ECF No. 78, ¶15. The Court directed Redman to file a response to the motion. ECF No. 82. Redman complied by filing a response, but the response was comprised of legal argument and did not address whether he had opted out of the Third-Party Release under the Plan. *See* ECF No. 90. Although the Court could regard his failure to respond to the Defendants' assertion as an admission, the Court declines to do so. Instead, the Court will deny Drs. Howick and Manhattan's motion to dismiss based on the Third-Party Release without prejudice and direct Redman within thirty (30) days to file evidence with the Court that he has opted out of the Third-Party Release. If Redman fails to file such evidence (or if he acknowledges that he did not opt out), the Court will reconsider the order on Drs. Howick and Manhattan's motion at ECF No. 78, and enter an order dismissing all claims against them, with prejudice.[8]

---

[8] Other plaintiffs whose claims have been determined to be barred by failing to opt out of the Third-Party Release have argued that they did not receive proper notice of the Bankruptcy confirmation order. *See e.g., Windom v. Malhi*, 2026 WL 523081, at *2 (M.D. Pa. Feb. 25, 2026). This Court agrees with the District Court in *Windom* that any such "argument must be asserted in the bankruptcy court." *Id.* "[T]he Bankruptcy Court retains jurisdiction over all matters arising out of, or relating to, the Chapter 11 cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code in accordance with the Plan, including Article XII." *Id.* (citing Plan and *Guggenheimer v. Wellpath, LLC*, 2025 WL 3008148, at *4 (M.D. Pa. Oct. 27, 2025) (finding that this provision of the plan requires

19

### E. The Amended Complaint fails to allege facts to support that Dr. Howick or Dr. Manhattan acted with deliberate indifference to Redman's serious medical needs or negligently in connection with his care.

Because the Court has denied Drs. Howick and Dr. Manhattan's motion to dismiss based on release in the Bankruptcy case, albeit without prejudice, it will address their earlier motion challenging the sufficiency of allegations against them to state a claim. The Amended Complaint alleges that Redman sustained his torn Achilles tendon sometime in 2021 and that he reported the injury to "Nurse Practitioner Gena," who diagnosed the injury as a "high ankle sprain and gave [him] a[n] ankle sleeve and ibuprofen and aspirin." ECF No 62, ¶¶46-48. The Amended Complaint goes on to allege that between this initial injury report until his surgery on November 28, 2022, he complained to various medical staff that something was wrong with his Achilles tendon, but no one responded to his complaints. But he alleges no facts to support that Dr. Howick or Dr. Manhattan was the recipient of any such complaint or in any way involved in his care between his initial report and his surgery.

As to Dr. Howick, the Amended Complaint alleges only that she was "employed by the DOC by and [through] Wellpath, is licensed by the Board of Medicine of the Commonwealth of Pennsylvania as a physician and surgeon, and responsible for

---

plaintiffs asserting lack of notice to pursue that argument in the bankruptcy court)). If this Court dismisses the claims against Drs. Howick and Manhattan based on Redman's failure to opt out, and the Bankruptcy Court subsequently finds that his claims are properly reopened based on a lack of notice, Redman may assert this in a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59 or a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60.

"overseeing all medical care provide[d] to individuals incarcerated in the SCI-Forest," and "reviewing, revising and drafting policies, governing the provision of medical care in the prison, monitoring the medical care provided by physicians employed by Wellpath to ensure they are providing appropriate care..., overseeing the clinical aspects of Wellpath's contract with the DOC and reviewing complaints and grievances regarding medical care." ECF No. 62, ¶7. The Amended Complaint includes no other allegations regarding Dr. Howick. It does not allege that she examined or treated Redman or otherwise participated in his care. It does not allege that she approved, disapproved, or modified any recommendation concerning his care. Instead, Redman casts Dr. Howick as a supervisor or administrator with supervisory responsibilities. Such allegations do not support a claim under § 1983 because they do not demonstrate Dr. Howick's personal involvement in any violation of Redman's constitutional rights.

Under § 1983, each named defendant "must have [had] personal involvement in the alleged wrongs to be liable," and no defendant can be "held responsible for a constitutional violation which he or she neither participated in nor approved." *Mack v. Clark*, 2022 WL 2669510, at *5 (W.D. Pa. July 11, 2022) (quoting *Saisi v. Murray*, 822 Fed. Appx. 47, 48 (3d Cir. 2020) and *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007)). As to each defendant, the plaintiff must allege facts to support that he or she was "'personal[ly] involve[d]' in depriving him of his rights." *Id.* (cleaned up) (quoting *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006) and *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). Such allegations must describe the

defendant's participation in conduct at issue and, to the extent possible, the date, time, and location of that participation. *See Evancho*, 423 F.3d at 354.

Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990). Rather, a supervisor may be liable only for unconstitutional acts undertaken by subordinates if the supervisor either: (1) with deliberate indifference to the consequences, established and maintained a policy or custom that directly caused the constitutional harm; or (2) participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Furthermore, an official's review and disposition of grievances lodged after the complained of conduct is not personal involvement in such conduct. *See Brooks v. Beard*, 167 Fed. Appx. 923, 925 (3d Cir. 2006) (responding "inappropriately to [plaintiff's] later-filed grievances about his medical treatment" does not "establish [defendants'] involvement in the treatment itself" and therefore does not support a claim); *Rogers v. United States*, 696 F. Supp. 2d 472, 488 (W.D. Pa. 2010) ("If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official.").

Although Redman describes Dr. Howick as a high-level supervisor with policymaking authority, he does not connect her to any policy or custom that allegedly resulted in his receipt of deficient care. He does not allege any facts to support that she adopted a policy or accepted a custom that resulted in others providing deliberately indifferent care to him. And he does not allege that she was on notice that he was receiving deficient care and responded to that notice with deliberate indifference. Because Redman has failed to allege facts to support any direct involvement of Dr. Howick's in his care or any basis for supervisory liability, his § 1983 claim against her will be dismissed.

Redman's Pennsylvania law medical malpractice claim against Dr. Howick is also subject to dismissal. Redman is essentially advancing a "captain of the ship" theory of vicarious liability against Dr. Howick. In certain circumstances, the captain of the ship doctrine holds responsible the surgeon or other physician in charge of an operative or other procedure for the negligence of persons also involved in the plaintiff's care. *See Karas v. Jackson*, 582 F. Supp. 43, 46 (E.D. Pa. 1983) (citing *Thomas v. Hutchinson*, 442 Pa. 118, 124–25, 275 A.2d 23, 26–27 (1971); *Collins v. Hand*, 431 Pa. 378, 391–93, 246 A.2d 398, 405–06 (1968); *Yorston v. Pennell*, 397 Pa. 28, 39, 153 A.2d 255, 259–60 (1959); *Grubb v. Albert Einstein Medical Ctr.*, 255 Pa.Super. 381, 395, 387 A.2d 480, 487 (1978). "Vicarious liability under the captain of the ship doctrine attaches only if the physician in question has the right to exercise control over the work to be done and the manner of performance." *Id.* (citing *Collins*, 431 Pa. at 394, 246 A.2d at 406). "The mere right to supervise, even as to the work

and the manner of performance, is not sufficient to create an agency relationship or to extend captain of the ship liability." *Id.* (citing *Yorston*, 397 Pa. at 39, 153 A.2d at 260). Although Redman alleges that Dr. Howick had significant supervisory authority, the facts alleged do not support that she had the right to intervene in and control the care and treatment decisions of the healthcare providers directly involved in his care. In fact, Redman does not identify any healthcare provider or providers who Dr. Howick had the right to, and failed to, control. Accordingly, Redman's medical malpractice claim against Dr. Howick also will be dismissed.

Although the Amended Complaint includes a few more factual allegations against Dr. Manhattan than Dr. Howick, they are likewise insufficient to state an Eighth Amendment deliberate indifference claim or a state law medical malpractice claim. Like Dr. Howick, the Amended Complaint describes Dr. Manhattan as a physician employed by the DOC through Wellpath who possessed significant supervisory authority over medical personnel and policy at SCI-Forest. ECF No. 62, ¶7. Redman further alleges that after Redman's second surgery on April 15, 2024, he "put in a sick call to get his sutures removed by Doctor Manhattan which was ignored for months." *Id.*, ¶74. It is unclear whether this delay was the fault of Dr. Manhattan or another person who reviewed Redman's sick call slip, but for purposes of the pending motion, the Court will assume Dr. Manhattan bore some responsibility. Redman next alleges that after he filed a grievance, Dr. Manhattan "came to the RHU and trimmed back the sutures and had the nurse [administer a shot of the antibiotic Rocephin to Redman,] which caused [his] incision to blow wide

24

open." *Id.*, ¶75. Redman does not allege that Dr. Manhattan's decision to direct the administration of the antibiotic injection was contraindicated or otherwise medically inappropriate. And he does not allege that Dr. Manhattan failed to respond or responded unreasonably to Redman's adverse reaction. In addition, while Redman also complains about the failure of prison staff to transfer him from the RHU to the infirmary after his second corrective surgery, he does not attribute this refusal to Dr. Manhattan or any other Defendant. In fact, he attributes the decision to "Brad Avenali," a nonparty. *Id.*, ¶80. Finally, Redman complains that Dr. Manhattan had to stop a procedure using a device he describes as a "wound vac" because the device "was not being maintained properly and it was causing too much moisture and tissue breakdown." *Id.*, ¶78. But Redman does not allege that Dr. Manhattan was involved in the maintenance of the device or that he engaged in any misconduct or neglect in connection with this incident. Thus, except for the delay in removing or trimming back Redman's sutures after his second surgery, the Amended Complaint does not allege that Dr. Manhattan neglected or responded improperly to his medical condition. And beyond annoyance, Redman does not allege that he suffered any adverse medical consequence because of the delay in trimming his sutures.

The Amended Complaint supports a plausible inference that errors and possible neglect may have occurred in connection the care Redman received at SCI-Forest, but it fails to support a plausible inference that any error or meaningful neglect can be attributed to Dr. Manhattan. This leaves the pleading short of stating

an Eighth Amendment deliberate indifference claim or a negligence claim against Dr. Manhattan. Therefore, the Court will also dismiss these claims.

**F. The Amended Complaint fails to allege facts to support Superintendent Irwin's personal involvement in any violation of Redman's rights.**

Redman identifies Irwin as the Superintendent of SCI-Forest and alleges that he "is responsible for the oversight and operations of the prison, including responding to inmate grievance appeals and ensuring that incarcerated individuals received (sic) necessary medical care." ECF No. 62, ¶6. The Amended Complaint includes no other substantive allegations against Irwin. Like Drs. Howick and Manhattan, Irwin's status as a supervisor and his involvement in the grievance process do not support his personal involvement in any violation of Redman's rights. They therefore also fail to support a claim under § 1983. *See Chinchello*, 805 F.2d at 133; *Brown*, 922 F.2d at 1120; *Brooks*, 167 Fed. Appx. at 925.

The Court also notes that the obligations of nonmedical personnel such as prison administrators and corrections officers differ from those of medical personnel. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (standard for deliberate indifference for claim of denial of proper medical care under the Eighth Amendment claims varies depending on whether the defendant is a medical defendant or a nonmedical defendant); *Miller v. Nowakowski*, 2025 WL 1938692, at *6 (W.D. Pa. July 14, 2025) (the duties owed to inmates by nonmedical personnel do not include a state law duty of reasonable care because no medical provider-patient relationship exists). Nonmedical prison personnel will not be deemed to have acted with deliberate

indifference to the serious medical needs of an inmate under the Eighth Amendment "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Id.* Furthermore, a nonmedical prison administrator "cannot be deemed deliberately indifferent simply because the lay administrator did not challenge the physician's care or respond directly to a prisoner's request for more or different treatment." *Chambers v. Adams*, 2023 WL 9100640, at *4 (W.D. Pa. July 31, 2023) (quoting *Judge v. Medical Dep't at SCI Greene*, 2007 WL 1576400, at *4 (W.D. Pa. May 31, 2007)) (internal quotation marks omitted).

In this case, Redman has not alleged any facts to support a plausible inference that Irwin, with deliberate indifference to the consequences, established and maintained a policy or custom that directly caused him to suffer constitutional harm. Nor has he alleged facts to support that Irwin participated in violating his rights, directed others to violate them, or was the person in charge of his medical care and had knowledge of and acquiesced in deliberately indifferent care by medical personnel. The Court will therefore dismiss the claims against Irwin.

## V. Summary and Conclusion

For the foregoing reasons, the Court will enter an order granting in part and denying in part the pending motions as follows:

a. denying as moot Defendant Clarion Hospital's Motion to Strike Plaintiff's Certificate of Merit (ECF No. 54), Defendant Smith's Motion to Dismiss

27

Plaintiff's Certificate of Merit (ECF No. 56), and Defendants Howick and Manhattan's Motion to Strike Plaintiff's Certificate of Merit (ECF No. 67);

b. denying without prejudice Defendants Manhattan and Howick's Motion to Dismiss Plaintiff's claims based on release in Bankruptcy (ECF No. 78) subject to reconsideration if Plaintiff fails, within thirty (30) days, to file proof that he opted out of the Third-Party Release in the Wellpath Bankruptcy Case; and

c. granting Defendants Howick and Manhattan's Motion to Dismiss the Amended Complaint under Rule 12(b)(6) (ECF No 65), Defendant Smith's Motion to Dismiss under Rule 12(b)(6) (ECF No. 71), Defendant Clarion Hospital's Motion to Dismiss under Rule 12(b)(6) (ECF No 63), and Defendant Irwin's Motion to Dismiss under Rule 12(b)(6) (ECF No. 69).

## VI.    Leave to Amend

When dismissing claims under Rule 12(b)(6), a district court should generally provide a pro se plaintiff like Redman leave to file a curative amendment unless doing so would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). And "in civil rights cases, district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). In this case, amendment would be legally futile as to Redman's § 1983 claims against Dr. Smith and Clarion Hospital because neither is a "state actor." The Court will therefore dismiss these

28

claims with prejudice. All other claims designated herein for dismissal will be dismissed without prejudice and with leave granted to Redman to file an amended complaint within thirty (30) days of filing of the Court's Order.

A separate Order follows.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE

29